IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION

| | | |
|---|---|---|
| Franchot Brown, | ) | |
| | ) | |
| Plaintiff, | ) | C/A NO. 3:05-3099-CMC |
| | ) | |
| v. | ) | |
| | ) | **OPINION AND ORDER** |
| Carolina Care Plan, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

This matter is before the court for resolution on the merits based on written submissions of the parties. Plaintiff Franchot Brown ("Brown") filed his motion for judgment on July 13, 2006. Defendant Carolina Care Plan, Inc. ("CCP") responded with a combined opposition and counter motion for judgment on August 26, 2006. For the reasons set forth below, the court finds that Brown is entitled to partial judgment finding that CCP abused its discretion in certain respects and returning the matter to CCP for further consideration as discussed at the conclusion of this order.

**APPLICABLE LAW AND STANDARD OF REVIEW**

It is undisputed that the benefits at issue are provided under an employee benefit plan governed by the Employee Retirement Income and Security Act, 29 U.S.C. § 1001 *et seq.* (ERISA). Brown's claim for benefits is, therefore, pursued solely under 29 U.S.C. § 1132(a)(1)(B).

It is also undisputed that CCP's benefits determination is subject to a modified abuse of discretion standard of review. *See* Dkt No. 31 at 1; Dkt No. 46 at 2-3. Under the basic abuse of discretion standard of review, the court is required to uphold the administrator's decision if it is reasonable, even if the court would have come to a different conclusion had it considered the matter independently. *See Ellis v. Metropolitan Life Ins. Co.*, 126 F.3d 228, 232 (4th Cir. 1997). A

decision is reasonable if it is "the result of a deliberate, principled reasoning process and if it is supported by substantial evidence." *Id*. at 232 (quoting *Brogan v. Holland*, 105 F.3d 158, 161 (4th Cir. 1997)).

The modified abuse of discretion standard is applied when the decision maker is operating under a conflict of interest as is conceded in this case. *See generally Colucci v. Agfa Corp Severance Pay Plan*, 431 F.3d 179 (4th Cir. 2005) (distinguishing circumstances in which conflict will and will not be found).[1] When a conflict exists, the court must weigh the conflict in determining whether there has been an abuse of discretion. *Booth v. Wal-Mart Stores, Inc. Assocs. Health & Welfare Plan*, 201 F.3d 335, 342 (4th Cir. 2000). The court may also "lessen the deference given to the fiduciary's discretionary decision to the extent necessary to neutralize any untoward influence resulting from the conflict." *Booth*, 201 F.3d at 342, n. 2 (internal citation and marks omitted).

Ultimately, the court must determine whether the benefits decision is consistent with a decision the plan might have made had it been acting free of the conflict. *See Ellis*, 126 F.3d at 233. As stated in *Ellis*:

> [I]n no case does the court deviate from the abuse of discretion standard. Instead, the court modifies that abuse of discretion standard according to a sliding scale. The more incentive for the administrator or fiduciary to benefit itself by a certain interpretation of benefit eligibility or other plan terms, the more objectively reasonable the administrator or fiduciary's decision must be and the more substantial the evidence must be to support it.

*Id.*

---

[1] In *Colucci*, the court found that no conflict was created by "the simple and commonplace fact that a plan's administrator is also its funder." but distinguished circumstances in which "employers contract with insurance companies to provide and administer health care benefits to employees through group insurance contracts." *Id.* at 179 (noting that a "conflict flows inherently from the nature of the [latter] relationship").

2

Numerous factors are considered in "determining the reasonableness of a fiduciary's discretionary decision,." *Booth,* 201 F.3d at 342-43. These include:

> (1) the language of the plan; (2) the purposes and goals of the plan; (3) the adequacy of the materials considered to make the decision and the degree to which they support it; (4) whether the fiduciary's interpretation was consistent with other provisions in the plan and with earlier interpretations of the plan; (5) whether the decisionmaking process was reasoned and principled; (6) whether the decision was consistent with the procedural and substantive requirements of ERISA; (7) any external standard relevant to the exercise of discretion; and (8) the fiduciary's motives and any conflict of interest it may have.

*Id.*

As these criteria reveal, the plan language is the starting point. *Id.* ("[a]s with any interpretation of a contractual trust document, we begin by examining the language of the Plan"). This is because "ERISA demands adherence to the clear language of the employee benefit plan." *White v. Provident Life Accident Ins. Co.*, 114 F.3d 26, 28 (4th Cir. 1997). *See also Feder v. Paul Revere Life Ins. Co.*, 228 F.3d 518, 522 (4th Cir. 2000) ("Because ERISA plans are contractual documents, although regulated, their interpretation is 'governed by established principles of contract and trust law.' . . . As with other contractual provisions, courts construe the plan's terms without deferring to either party's interpretation." – quoting *Haley v. Paul Revere Life Ins. Co.*, 77 F.3d 84, 88 (4th Cir.1996)).

Where the claims administrator denies benefits based on the clear language of the plan documents, the claims administrator does not abuse its discretion. *See, e.g., Coleman v. Nationwide Life Ins. Co.,* 969 F.2d 54 (4th Cir. 1992). It follows that a decision which is contrary to the plain language of the Plan is, necessarily, an abuse of discretion.

**MEDICAL EXPENSES AT ISSUE**

Brown challenges CCP's decision to deny or reduce benefits paid on the following bills.

1. North Carolina Baptist Hospital bill for speech therapy in the amount of $296.50.

2. North Carolina Baptist Hospital bill for surgical facility charge of $6,662.70.

3. Dr. Koufman's bill for $7,800.00. Defendant paid $1,211.68.

4. Wake Forest University's bill for anesthesia in the amount of $1,296.00. Defendant allowed $394.63 and paid $236.78.

Brown's Motion (Dkt No. 31 at 1).

Brown asserts that CCP abused its discretion in denying or failing to pay the full amount of these bills. As discussed more fully below, his arguments focus on CCP's failure to address the reason for the denial of one of the bills (for speech therapy) in CCP's final denial letter and its failure to provide proper comparison information as to the remainder of the bills.

While CCP offers no discussion specific to the dollar amounts paid on these claims, an exhibit to its motion suggests that somewhat more was allowed (credited against Brown's deductible) on one of the four charges (hospital facility charge). CCP's discussion otherwise supports Brown's recitation of facts.

Specifically, an internal memorandum provided to a review panel during the claim review process indicates that the following payments or credits against deductibles were allowed:

1. Speech Therapy – no payment or credit allowed, claim for $296.50 was denied as a non-covered service (stating speech therapy services are covered "only [if needed] as a result of stroke, injury or congenital anomaly");

2. Hospital Facility Charge – $730.88 credited against deductible (indicates total bill of $6,663.80 with $5,932.92 being disallowed – no reason stated);

4

       3.       Dr. Koufman bills – $1,211.68 credited against deductible (indicates total bill of $7,800 with $6,588.32 being disallowed);

       4.       Anesthesia charges – referenced in manner that suggests nothing was paid on the $1,296 bill (though some portion apparently was paid).

Dkt 46, Exhibit 1at W&H 1.0035.

### DISCUSSION

**1.    Speech Therapy.**

Brown argues that the court should direct CCP to pay the speech therapy bill in full because CCP failed to address this bill in its final denial letter. Dkt No. 31 at 2. It is not, however, clear if this particular bill was the subject of the appeal addressed in that letter. Moreover, by his inclusion of a "but see" citation, Brown acknowledges that he was advised in an earlier denial letter that his appeal of the denial of the speech therapy bill was untimely. Dkt No. 31 at 2 (citing Pltf Ex. at 89 without any discussion beyond a "but see" signal). Brown does not, in any case, offer any specific challenge to either: (a) the original basis of denial of this claim (not a covered service for his condition); or (b) the basis for the initial rejection of his appeal (untimely).

CCP, on the other hand, fails to even mention the speech therapy charges in its response. What argument CCP offers is directed to the propriety of its application of the out-of-network coverage provisions. This was not the basis for denial of the speech therapy claim and is, therefore, irrelevant to this aspect of Brown's claim.

In short, neither side has done an adequate job of addressing this claim. However, as Brown bears the burden of proof, and as he has offered no basis for challenging either the substantive basis for denial of the speech therapy claim or the procedural grounds for rejecting the appeal, the court must affirm the denial.

### 2. North Carolina Baptist Hospital – Facility Charge

Brown challenges the denial of the bill from North Carlina Baptist Hospital, asserting that no portion of this bill for $6,662.70 was paid. Brown argues:

> The decision to pay nothing is not within the discretion granted under the plan. Nor is there anything in the record which shows the cost of comparable services for in network providers. Accordingly, except for the out-of-network co-pay the entire bill should be paid.

Dkt No. 31 at 2.

Brown's assertion that nothing was paid on the hospital facility charge is technically correct. It appears, however, that $730.88 was deemed an allowable charge, and was credited against Brown's $3,000 deductible. This disposes of his first argument (that "[t]he decision to pay nothing is not within the discretion granted under the plan"), leaving his argument based on the absence of evidence as to the cost of comparable services.

CCP does not address any of the bills specifically. Instead, it rests its argument on an assumption that Brown is challenging the application of out-of-network reimbursement rates:

> In the instant case, it is undisputed that Brown sought treatment from out-of-network providers. (See, Exs. 1-3). Brown would have the Court determine that the procedure he underwent was not available via an in-network provider, but the administrative record reflects a different situation. (See, Ex. 2). The record reflects that Brown sought treatment from an out-of-network provider without attempting to utilize an in-network provider. (Id.) Moreover, the procedure could have been performed by an in-network provider. (See, Ex. 3).
>
> Brown's plan documents clearly state that:
>
> Eligible Expenses
>
> Eligible Expenses are the amount we determine that we will pay for Benefits, less any charges You are responsible to pay…For Network Benefits, you are not responsible for any difference between the Eligible Expenses and the amount the Provider bills. For

> Non-Network Benefits, you are responsible for paying, directly to the non-Network Provider, any difference between the amount the Provider bills you and the amount we will pay for Eligible Expenses.
>
> (See, Ex. 5). Brown knew that CCP considered his treatment by the chosen providers to be out-of-network benefits, and he accepted the responsibility to pay the difference between what CCP paid and what the provider billed. (See, Ex. 2) (letter dated March 17, 2004).
>
> * * *
>
> While the provider at issue and Brown may disagree with the amount, if any, paid by CCP for the services rendered, Brown clearly knew that he would be responsible for the difference between the eligible expenses paid by CCP and the amount billed by the provider. (See, Exs. 2 and 5). Brown chose to utilize an out-of-network provider and was fully informed of the costs he would incur for doing so. (See, Ex. 2). Thus, CCP's decision to deny the amounts at issue should be upheld both because it is supported by the plain language of the Plan Documents and because the decision is the result of a deliberate, principled reasoning process supported by substantial evidence. (See, Ex. 1); *Ellis*, 126 F.3d at 232.

CCP Motion (Dkt No. 46) at 4-5.

CCP's argument (quoted above) may address a position taken by Brown during some earlier stage of these proceedings or during the appellate process before the Plan. It ignores, however, the concession inherent in Brown's above-quoted argument, that he is only seeking payment under the out-of-network provisions of the Plan. *See* Dkt No. 31 at 2 (concluding that "except for the out-of-network co-pay the entire bill should be paid").[2] Thus, the bulk of CCP's discussion is directed toward an argument Brown does not make.

The remaining question is what amounts should have been paid for these services under the out-of-network provisions of the Plan. In this regard, Brown notes only that the record fails to show

---

[2] This court would, in any case, reach the same conclusion. The determination whether the services at issue were available from in-network providers falls within the scope of CCP's discretionary authority and no evidence has been offered which would support a finding that CCP abused its discretion as to this determination.

"the cost of comparable services for in network providers." Dkt No. 31 at 2 (quoted in greater length above).  CCP, by contrast, asserts that:

> the Plan Documents grant CCP the discretion to determine the amount it will pay for procedures performed by non-network providers.  Specifically, CCP defines eligible expenses for "non-network benefits" to be that *amount "calculated based on the reasonable and customary charge which is representative of the average and prevailing charge for the same health service ... as determined by [CCP]*." (See, Ex. 6). Here, the record reflects that CCP compared the cost of the procedure performed at an in-network facility (MUSC) to the amount charged by the out-of-network facility. (See, Exs. 1 and 3).

CCP Memo (Dkt 46) at 4 (emphasis added).

The italicized language in the preceding quote is misleading, as it leaves out the critical phrase "in that geographic area."  Quoted in full the relevant Plan language explains that "Eligible Expenses" for non-Network Benefits are "calculated based on the reasonable and customary charge which is representative of the average and prevailing charge for the same health service *in that geographic area* as determined by [CCP]."  CCP Ex. 6 (W&H 1.0413) (emphasis added).

When the accurately quoted provision is applied to the facts as conceded by CCP, it is clear that CCP abused its discretion by basing its determination on "the cost of the procedure performed at an in-network facility (MUSC)."  CCP's decision is contrary to the plain language of the Plan in two respects.  First, MUSC is not in the geographic area where the service was performed.  Second, the rates which should have been used for comparison are the "average and prevailing charge(s) for the same health service," not the reduced in-network rates charged by a in-network providers, much less by a single in-network provider.

The court, therefore, finds that CCP failed to comply with the Plan documents in calculating "Eligible Expenses."[3] The court cannot, however, award benefits because it lacks information from which it might determine the "average and prevailing charge" for the relevant services in the geographic area where the service was performed. Moreover, because the Plan allows CCP to determine these amounts from its choice of several enumerated sources, and because selection of the sources is within CCP's discretion, the better course is to remand for CCP to make the determinations in the first instance. The matter is, therefore, remanded to CCP for appropriate further proceedings as explained below. *See infra* § 5 Further Plan Review.

### 3. Koufman – Physician's Services

Defendant's arguments relating to payment for Koufman's services suffer from the same defects as addressed in the preceding section. The matter is, therefore, remanded for further review by CCP.

As to the Koufman bill, the remand is intended solely for the purpose of determining the amount of the "Eligible Expense." The court finds no abuse of discretion in the Plan's determinations that: (1) the services provided by Dr. Koufman are the same as are available from in-network providers; and (2) the CPT code used in determining Eligible Expenses accurately reflects the services provided.

---

[3] It is also unclear on what basis a 60% reimbursement percentage was applied. This may, indeed, be the reimbursement rate applied to Eligible Expenses of non-network providers given that Brown has not suggested some other rate would apply. Neither side has, however, directed the court to the relevant Plan provision and the court has found no support for this percentage in the few pages of the Plan provided to the court.

### 4. Wake Forest University – Anesthesia.

Defendant's arguments relating to the bill for anesthesia services suffer from the same defects as addressed above (§ 3). The decision is, therefore, remanded for further review by CCP as discussed below (§ 5).

### 5. Further Plan Review.

Brown is entitled to partial judgment in his favor, with the remedy being remand of the matter to CCP for reconsideration of the Eligible Expenses to be paid under the non-network provider provisions of the Plan. Within thirty days after entry of this order, Brown may submit any additional materials he wishes to CCP to consider in regard to determination of Eligible Expense. CCP shall, during the same period, obtain and provide Brown with such comparative information as may be available and on which it intends to rely.[4] CCP shall render its written decision within sixty days of entry of this order and immediately provide Brown with notice of that decision.

CCP's written decision shall set forth, in detail, the basis for CCP's determination of Eligible Expenses and shall attach supporting materials. The basis for the final calculation of benefits to be paid (or applied against deductibles) shall be set forth. The relevant pages of the Plan shall also be specified and provided (specifically addressing the percentage applied).

In the event he believes CCP's ultimate decision is an abuse of discretion, Brown may move to reopen this action for further proceedings. Any such motion shall be made within thirty days after receipt of CCP's decision. The motion shall be accompanied by a memorandum which shall set forth, in full, the basis of Brown's contention that CCP has abused its discretion or failed to comply

---

[4] The limited pages of the Plan provided to this court suggest various sources which may be used by the Plan to determine reasonable rates. The Plan shall specify which of these sources it has elected to use as well as providing the data on which it relies.

with the terms of this order. The motion shall not be used to reargue any matter decided herein.

CCP shall file its response within fifteen days after service of Brown's motion and memorandum. CCP shall provide, as an attachment to that response, the full record compiled on remand. Brown shall have five business days to file a reply.

The court will defer entry of judgment for ninety-five days following entry of this order. Judgment will be entered at that time absent earlier motion to reopen the action.

## CONCLUSION

For the reasons set forth above, the court finds that Plaintiff Brown is entitled to judgment in his favor finding that Defendant CCP abused its discretion in failing to follow the terms of the Plan in determining Eligible Expenses as to all bills other than the speech therapy charges. The court declines to award any specific dollar amount of benefits for the reasons set forth above. Entry of judgment shall be withheld for ninety-five days from entry of this order to allow for completion of further review by CCP as set forth above. Absent filing of a timely motion for reopening this matter, the court will enter judgment with the award being a limited to the remand addressed above.

IT IS SO ORDERED.

s/ Cameron McGowan Currie
CAMERON MCGOWAN CURRIE
UNITED STATES DISTRICT JUDGE

Columbia, South Carolina
September 11, 2006